IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

ANNA KIRKLAND,                      *
                                    *
        Plaintiff,                  *
                                    *        CV 325-123
    v.                              *
                                    *
DODGE COUNTY SCHOOL DISTRICT,       *
                                    *
        Defendant.                  *

---

**O R D E R**

---

Plaintiff Anna Kirkland, a former employee of Defendant Dodge County School District (the "School District"), filed this lawsuit on December 29, 2025.  At present, the School District has filed a motion to dismiss Plaintiff's claims.  The Court has reviewed the operative complaint, which is an Amended Complaint, the parties' briefs, and the relevant case law and resolves the matter as follows.

## I.   MOTION TO DISMISS STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  The United States Supreme Court has provided additional guidance to the Rule 8(a) analysis

in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Pursuant to the Twombly/Iqbal paradigm, to survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). To be plausible, the complaint must contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct." Id. at 679; GeorgiaCarry.Org, Inc. v. Georgia, 687 F.3d 1244, 1254 (11th Cir. 2012) (stating that a plaintiff must necessarily "include factual allegations for each essential element of his or her claim"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 566 U.S. at 678-79. Stated another way, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678.

## II. FACTUAL ALLEGATIONS

The following facts drawn from the allegations of the Amended Complaint are accepted as true and all reasonable inferences therefrom are drawn in favor of the plaintiff. See Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016).

A.  The Incident and the Aftermath

Plaintiff was hired by the School District as a cook in 2021. (Am. Compl., Doc. No. 10, ¶ 6.)  At the time relevant to the lawsuit, she was working in an elementary school.  (Id. ¶ 8.)  She was one of only two Hispanic employees working in the kitchen at that school. (Id. ¶ 9.)  Her direct supervisor was Food Service Manager, Lisa Burch, a white woman. (Id. ¶ 7.)

In the early morning hours of September 10, 2025, Plaintiff was preparing breakfast at the school when the School District's Director of Nutrition, Alisha Cheeks, a white woman, entered the kitchen where Plaintiff was working. (Id. ¶ 10.)  Believing Ms. Cheeks may be looking for Ms. Burch, Plaintiff informed her that Ms. Burch was in her office.  At this point, Ms. Cheeks aggressively approached Plaintiff, stopping only inches away from her face, and yelled at and berated Plaintiff in front of her co-workers.  (Id. ¶ 11.)

Ms. Cheeks ordered Plaintiff into a locker room.  Plaintiff expressed that she did not want to be in the locker room by herself with Ms. Cheeks and asked that Ms. Burch be present. (Id. ¶ 12.) Ms. Cheeks refused the request and ordered Plaintiff into the locker room.  (Id.)  Once inside, Ms. Cheeks closed the door, trapping Plaintiff inside.  Ms. Cheeks continued to yell at Plaintiff, and she repeatedly stated "you little Mexican girl" in a derogatory manner to degrade and belittle Plaintiff. (Id. ¶ 14.)

3

Plaintiff backed away, but Ms. Cheeks "stalked toward" her, jabbed her finger in Plaintiff's face, and physically prevented Plaintiff from leaving. (Id. ¶ 15.)  When Ms. Burch attempted to enter the room, Ms. Cheeks used her foot to prevent the door from opening, all the while continuing to angrily call Plaintiff a "little Mexican girl." (Id. ¶ 16.) Plaintiff feared for her safety and tried to retrieve her cell phone from her personal locker, but Ms. Cheeks slammed the locker door shut and injured Plaintiff's hand. (Id. ¶ 17.)  Ms. Cheeks held Plaintiff in the locker room with her for approximately thirty minutes, insulting her and screaming at her. (Id. ¶ 19.)  Once Ms. Cheeks allowed Plaintiff to leave, Plaintiff left the school, but Ms. Cheeks followed her into the parking lot still screaming at Plaintiff. (Id. ¶ 21.)

After the incident, Plaintiff filed a report with the Eastman Police Department.  An officer interviewed Plaintiff and several other witnesses, but Ms. Cheeks refused to speak to law enforcement without an attorney.  (Id. ¶¶ 24-25.)

The School District's Superintendent, Susan Long, met with Plaintiff soon after the incident and informed her that Ms. Cheeks had tried to have Plaintiff fired. (Id. ¶ 27.)  Superintendent Long did not fire Plaintiff and told her that she would have to continue to work under Ms. Cheeks.  No remedial action was taken against Ms. Cheeks. (Id. ¶ 29.)

A week later, Ms. Cheeks called a meeting with Plaintiff and Ms. Burch; the School District's Human Resources representative, Misty Selph, was also present. (Id. ¶ 30.)  At this meeting, Ms. Cheeks told Plaintiff, "You need to make this go away," referring to the police report.  Plaintiff felt pressured to withdraw her complaint. (Id. ¶ 31.)  Ms. Selph refused to support Plaintiff or take any remedial action against Ms. Cheeks. (Id. ¶ 32.)

Approximately a week after the incident, Plaintiff suffered a miscarriage.  (Id. ¶ 34.)  Plaintiff suffered severe physical, mental and emotional distress based upon the incident and the School District's failure to address the harassment. (Id. ¶ 33.)

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 25, 2025 (the "First Charge"). (Id. ¶ 35.)  Based upon Plaintiff's reports to the police, the Superintendent, the Human Resources representative, and the EEOC, Ms. Cheeks engaged in a campaign of harassment and retaliation to force Plaintiff to quit.  (Id. ¶¶ 36-37.)  Every time she went to Plaintiff's workplace, Ms. Cheeks persistently criticized her work based on arbitrary expectations that did not exist prior to the incident. (Id. ¶ 38.)  Ms. Cheeks pressured Ms. Burch to issue a formal write-up against Plaintiff, but Ms. Burch refused. (Id. ¶ 39.)  Ms. Cheeks also prevented Plaintiff from bringing her four-year-old son to work in the

5

mornings, a practice that had been happening for months without complaints prior to the Incident. (Id. ¶¶ 40-41.)

Because the School District did not address the Incident, Plaintiff feared for her safety at work every day. (Id. ¶ 42.) Each time Ms. Cheeks appeared at Plaintiff's workplace, she glared threateningly at Plaintiff and caused her to fear that she would be assaulted again. (Id. ¶ 43.) Based upon her constant fear of Ms. Cheeks, Plaintiff left her employment on October 31, 2025. (Id. ¶¶ 47-48.)

B. Administrative Exhaustion

As mentioned, Plaintiff filed her First Charge with the EEOC on September 25, 2025, prior to the termination of her employment.[1] In the First Charge, Plaintiff relates the locker room incident of September 10, 2025, and the post-incident meeting with Superintendent Long wherein no remedial action was taken against Ms. Cheeks. She neither mentions her race or national origin nor being called a "little Mexican girl" or any other derogatory or racially charged name. Plaintiff only states that she felt overwhelmed by the situation. Plaintiff claims that the conduct was retaliatory "for opposing a wrongful workplace action under Title VII," though she does not indicate what her oppositional conduct was.

---

[1] The First Charge appears in the record at Doc. No. 21-1.

On December 1, 2025, after Plaintiff ended her employment with the School District, she filed a Second Charge with the EEOC.[2] The allegations are very much akin to those found in the Amended Complaint. Plaintiff, identifying herself as Mexican and Hispanic, once again describes the berating and intimidating behavior of Ms. Cheeks on the day of the Incident. She also relates that Superintendent Long did nothing about the Incident but instead kept Plaintiff under the supervision of Ms. Cheeks. Plaintiff claims that Ms. Cheeks continued to harass and criticize her after the Incident and retaliated against her by not allowing her to bring her son to school a few hours each morning. Plaintiff claims the harassment and retaliation made working at the school unbearable; thus, she was "forced to resign." Plaintiff states that she was discriminated against and retaliated against based upon her race and national origin.

The EEOC issued a Notice of Right to Sue on both charges prior to Plaintiff filing suit on December 29, 2025. Following a defense motion to dismiss the case, Plaintiff filed an Amended Complaint on February 11, 2026, which is the operative complaint in the case.[3]

---

[2] The Second Charge appears in the record at Doc. No. 14-2.

[3] The Clerk is directed to **TERMINATE AS MOOT** the first motion to dismiss (doc. no. 8) filed on January 28, 2026.

The Amended Complaint contains the following five counts against the School District: (1) race discrimination (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e – 2000e-17 ("Title VII"); (2) national origin discrimination (Mexican) in violation of Title VII; (3) retaliation in violation of Title VII; (4) race discrimination in violation of 42 U.S.C. § 1983; and (5) retaliation in violation of 42 U.S.C. § 1983.  The School District has moved to dismiss all claims.

### III.   LEGAL ANALYSIS

The School District's motion to dismiss seeks dismissal of all of Plaintiff's claims, yet it focuses primarily on perceived procedural defects related to the Title VII claims and the sufficiency of Plaintiff's claims of retaliation.  Some of the School District's arguments border on frivolity and discredit the probity of the motion.

To begin, the School District does not differentiate between Plaintiff's Title VII claims of discrimination and retaliation and her § 1983 claims. Plaintiff's § 1983 claims provide an alternative basis for liability that do not require the preconditions to suit on which the School District focuses.  See Patsy v. Bd. of Regents, 457 U.S. 496 (1982) (holding that a plaintiff need not exhaust administrative remedies before bringing a § 1983 suit).  Thus, the School District's complaints about the timing and adequacy of the

EEOC charges vis-à-vis the allegations in the Amended Complaint are wholly irrelevant to Plaintiff's § 1983 claims.

The School District also contends that Plaintiff's entire suit should be dismissed because it was not brought within 90 days of the issuance of the Notice of Right to Sue on the First Charge. The Notice of Right to Sue was issued on September 29, 2025. Plaintiff had ninety (90) days to file suit; that is, she had until December 28, 2025.  Suit was filed on December 29, 2025.  The problem with the School District's claim for dismissal is that December 28, 2025, was a Sunday.  Plaintiff's lawsuit filed the next business day, Monday, December 29th, was timely.  See Fed. R. Civ. P. 6(a)(1)(C).

Next, the School District argues that the filing of the Second Charge cannot form the basis of a retaliation claim because Plaintiff had already left her employment when she filed the Second Charge.  Plaintiff's retaliation claims, however, do not mention the Second Charge.  Rather, Plaintiff states in her Amended Complaint that the protected activity under Title VII (and in her § 1983 retaliation claim) includes her report to the Eastman Police Department, her report to the Human Resources representative, and the First Charge filed with the EEOC.  Plaintiff does not use the Second Charge as a protected activity.  Accordingly, the School District's argument in this regard is therefore puzzling and unavailing.

9

The School District next claims that the allegations in Plaintiff's Amended Complaint exceed the scope of the First Charge of Discrimination.[4]  In order to sue on a Title VII claim, a plaintiff must first file a timely charge with the EEOC.  This charge must be filed within 180 days after the alleged unlawful employment practice occurred.  42 U.S.C. § 2000e-5(e).  In this case, both the First Charge and the Second Charge were filed within 180 days of the locker room Incident on September 10, 2025.  The lawsuit was timely filed thereafter.

"A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." Alexander v. Fulton Cnty., Ga., 207 F.3d 1303, 1332 (11th Cir. 2002).  Indeed, allegation in the complaint may "amplify, clarify, or more clearly focus" the allegations in the EEOC complaint, "but allegations of new acts of discrimination are inappropriate." Gregory v. Ga. Dep't of Human Res., 355 F.3d 1277, 1279-80 (11th Cir. 2004) (citation omitted). Notably, the First Charge does not mention race or national origin discrimination, and it does not clearly indicate how the School District's conduct was retaliatory.  Nevertheless, the Court will look to the administrative process as a whole, i.e., both charges, to determine if Plaintiff's allegations exceed the scope of the EEOC process.  After a careful reading of the Second Charge of

---

[4] This argument is inapplicable to Plaintiff's § 1983 claims, which do not require administrative exhaustion.

Discrimination, admittedly the more detailed one, the Court readily determines that Plaintiff's claims of discrimination based upon race and national origin are adequately detailed in and may be reasonably expected out of the EEOC administrative process. Thus, Plaintiff properly exhausted her race and national origin discrimination claims.

Aside from attacking the timing and scope of Plaintiff's lawsuit, the School District does not otherwise mention the sufficiency of Plaintiff's racial and national origin discrimination claims in its original motion to dismiss. Instead, in its Reply Brief, the School District contends that Plaintiff has failed to allege racial discrimination because "Mexican" does not denote race. The School District states that "race" and "national origin" are "not co-terminus." (Reply Br., Doc. No. 20, at 4.) First, it is improper for a litigant to raise a new ground for dismissal in a reply brief. Second, the Court will not engage in the suggested parsing of words at the dismissal stage. It suffices that Plaintiff alleges a claim based upon discriminatory animus demonstrated by repeated and beratingly calling her "little Mexican girl" in a confined locker room and the alleged subsequent harassment.

Finally, the Court turns to the School District's motion to dismiss Plaintiff's claims of retaliation in Count III (Title VII) and Count V (§ 1983). To state a claim for retaliation, a plaintiff must allege that "(1) she engaged in statutorily protected conduct;

11

(2) she suffered an adverse employment action; and (3) the adverse action was causally related to the protected conduct." Trask v. Sec'y, Dep't of Veterans Affairs, 822 F.3d 1179, 1193-94 (11th Cir. 2016). In this case, Plaintiff alleges in both counts that she engaged in protected activity in opposing discrimination when she reported the Incident to the Eastman Police Department, the School District's Human Resources representative, and the EEOC in filing the First Charge. Plaintiff further alleges that these reports led to intolerable harassment by Ms. Cheeks resulting in her constructive discharge.

The Court agrees with the School District that Plaintiff does not mention the First Charge of Discrimination in her Second Charge; rather, she discusses her report to the Eastman Police Department and to the Superintendent and the School District's subsequent failure to protect her. The School District, through the Superintendent, placed Plaintiff back under the supervision of Ms. Cheeks, whose alleged conduct was egregious enough to warrant a police report. Plaintiff states that Ms. Cheeks continued to harass her and unlawfully retaliated against her. She affirmatively states that the consistent harassment and retaliation made her working conditions unbearable, and ultimately, given the School District's refusal to remediate, she was forced to resign. In light of these statements made to the EEOC in the Second Charge, there is no plausible argument that the

12

School District could not reasonably anticipate the retaliation claim presented in Count III.[5]

Relative to the retaliation claims, the School District also challenges whether Plaintiff's allegations rise to the level of constructive discharge. The allegations of the Amended Complaint are more ample than what is presented in the administrative process. Most noteworthy is Plaintiff's allegation that Ms. Cheeks told her to make the Eastman Police report "go away" in the presence of both the Superintendent and the Human Resources representative. Yet, the School District's response was to keep Plaintiff under the supervision of Ms. Cheeks, which in and of itself seems punitive. Against the backdrop of the School District's refusal to take remedial action, Plaintiff's allegations of unwarranted criticism, threatening glares, and deliberate disallowance of prior privileges take on a greater magnitude of seriousness. Considered collectively at this early stage of litigation, Plaintiff sufficiently alleges that her working conditions became so intolerable that a reasonable person would resign. That is, Plaintiff has stated a plausible claim of constructive discharge under both Counts III and V.

---

[5]  Again, this ground does not apply to Plaintiff's § 1983 claim of retaliation, which does not require administrative exhaustion.

## IV.   CONCLUSION

Upon the foregoing, Defendant's motion to dismiss Plaintiff's Amended Complaint (doc. no. 14) is **DENIED**.

In accordance with the Order of February 17, 2026, the parties shall confer and submit a Rule 26(f) Report, with proposed case deadlines, within seven days of the entry of this Order.

**ORDER ENTERED** at Augusta, Georgia, this ___6th___ day of July, 2026.

_____
UNITED STATES DISTRICT JUDGE

14